**IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION**

HIMANSHU R.,

      Plaintiff,

      v.

FRANK BISIGNANO,
Commissioner of Social Security,

      Defendant.

    No. 25 C 9328

    Magistrate Judge M. David Weisman

## MEMORANDUM OPINION AND ORDER

Himanshu R. appeals the Commissioner's decision denying his application for Social Security benefits. For the reasons set forth below, the Court affirms the Commissioner's decision.

### Background

On September 26, 2022, plaintiff applied for benefits, alleging a disability onset date of January 29, 2022. (R. 17.) His application was denied initially, on reconsideration, and after a hearing. (R. 17-32.) Plaintiff appealed to the Appeals Council, which denied review (R.1-3), leaving the ALJ's decision as the final decision of the Commissioner, reviewable by this Court pursuant to 42 U.S.C. § 405(g). *See Villano v. Astrue*, 556 F.3d 558, 561-62 (7th Cir. 2009).

### Discussion

The Court reviews the ALJ's decision deferentially, affirming if it is supported by "[s]ubstantial evidence," *i.e.*, "'such relevant evidence as a reasonable mind might accept as adequate to support a conclusion.'" *Gedatus v. Saul*, 994 F.3d 893, 900 (7th Cir. 2021) (quoting *Richardson v. Perales*, 402 U.S. 389, 401 (1971)). "[W]hatever the meaning of 'substantial' in other contexts, the threshold for such evidentiary sufficiency is not high." *Biestek v. Berryhill*, 587 U.S. 97, 102-03 (2019).

Under the Social Security Act, disability is defined as the "inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months." 42 U.S.C. § 423(d)(1)(A). The regulations prescribe a five-part, sequential test for determining whether a claimant is disabled. *See* 20 C.F.R. §§ 404.1520(a), 416.920(a). The Commissioner must consider whether: (1) the claimant has performed any substantial gainful activity during the period for which he claims disability; (2) the claimant has a severe impairment or combination of impairments; (3) the claimant's impairment meets or equals any listed impairment; (4) the claimant retains the residual functional capacity ("RFC") to perform his past relevant work; and (5) the claimant is able to perform any other work existing in significant numbers in the national economy. *Id.*; *see Zurawski v. Halter*, 245 F.3d 881, 885 (7th Cir. 2001).

At step one, the ALJ found that plaintiff had not engaged in substantial gainful activity since January 29, 2022, the alleged onset date. (R. 20.) At step two, the ALJ found that plaintiff has the severe impairments of epilepsy, neurocognitive disorder due to traumatic brain injury, alcohol use disorder in early remission, degenerative disc disease lumbar spine, degenerative joint disease in both shoulders, and chondromalacia both knees. (*Id.*) At step three, the ALJ found that plaintiff does not have an impairment or combination of impairments that meets or equals a listed impairment. (*Id.*) At steps four and five, respectively, the ALJ found that plaintiff cannot perform any past relevant work but has the RFC to perform jobs that exist in significant numbers in the national economy, and thus he is not disabled. (R. 22, 31-32.)

The ALJ crafted an RFC that accounted for plaintiff's seizures and the attendant postictal state by barring him from climbing ladders, ropes and scaffolds and from having exposure to

2

hazards like moving machinery, unprotected heights, working with electric circuits, operating motor vehicles, and limiting him to carrying out simple instructions, making simple work-related decisions. (R. 22.) But the ALJ did not determine whether the time attributable to plaintiff's seizures and the postictal state that follows them would cause plaintiff to be off task more than fifteen percent of the workday or to miss two or more workdays per month, either of which would preclude plaintiff from doing competitive work. (*See* R. 84 (VE testimony).)

As defendant points out, however, it is plaintiff's burden, not the ALJ's, to prove that he is disabled, including that his impairments would cause him to be off task more than fifteen percent of the workday or to miss more than two workdays per month. Plaintiff offered mixed evidence about the frequency of his seizures. The notes of an October 2022 exam by neurologist Dr. Sahay say that plaintiff had had five seizures that year. (R. 379.) The notes of plaintiff's May 2023 consultation with Dr. Sahay state that he has two mild seizures a month. (R. 366-67.) The RFC questionnaire completed by another neurologist, Dr. Choi, in May 2024, states that plaintiff has two or three seizures per week, he needs to take unscheduled breaks every hour, and he would likely miss more than four workdays per month. (R. 1059-61.) An RFC questionnaire completed by family medicine practitioner Michael Melnick in May 2024 states that plaintiff's impairments would likely cause him to be absent more than four workdays per month and to take a fifteen-minute unscheduled break every thirty minutes of a workday (R. 1067, 1069.) Plaintiff testified that he had six convulsive seizures from January 2022 to October 2022. (R. 52.) He also testified that he had two to three seizures per month from October 2022 to May 2023, that he had convulsive seizures three to four times per week during the same period, and that he had two to three seizures per month since 2023. (R. 54-55, 61.)

The ALJ found plaintiff's testimony about the nature and frequency of his seizures was not supported by the record:

> While [plaintiff] testified that he could not tell what type of seizure he was having, this is not consistent with the record. For example, in January 2023, he reported a breakthrough seizure, but it did not progress to convulsion, and in May 2023, he reported having only "mild" seizures where he stares off, occurring once or twice a month. Additionally, the frequency of seizures he testified to is not supported either, with inconsistencies within his testimony of anywhere from 2-3 a week to 2-3 a month, while records show a total around 5 for 2022, and then only "mild" seizures, where he stares off and loses time, occurring 1-2 times a month, with no further convulsions in 2023. In fact, the records only show one significant seizure that occurred in August 2023, and no further seizures since then, with report of only episodes of "spacing out" with memory issues and déjà vu, as well as side effects of medications. He admits that lamotrigine had significantly stopped bigger convulsive seizures.

(R. 24) (citations omitted). Implicit in that analysis is a rejection of plaintiff's claim that his seizure disorder would cause him to be off task fifteen percent of a workday or to miss more than four workdays per month. *Gedatus,* 994 F.3d at 900.

Plaintiff also argues that the ALJ wrongly assessed his reports about his symptoms. This argument is really a request that the Court reweigh the evidence offered by plaintiff and Dr. Choi about the type and frequency of his seizures. (*See* ECF 11 at 12-13.) Because that is not something the Court is permitted to do, the ALJ's subjective symptom analysis stands. *Thorps v. Astrue*, 873 F. Supp. 2d 995, 1003 (N.D. Ill. 2012) ("The court may not reweigh the evidence or substitute its judgment for that of the ALJ.")

Next, plaintiff argues that the ALJ's rejection of Dr. Choi's opinion is erroneous because the ALJ "[did not] articulate [his] reasons for rejecting a treating source opinion [or] . . . properly consider the supportability of that opinion and whether it is consistent with the evidence of record." (*Id.* at 13.) The Court disagrees. The ALJ said this about Dr. Choi's opinion:

> On May 3, 2024, neurologist, Dr. Choi indicated the claimant needs hourly breaks all day. This is not persuasive, as it appears to be solely based on the claimant's

4

> self-reported limitations at the visit on December 2023, but it is not supported by objective findings, including normal Short Test of Mental Status, and no acute distress, appropriate, awake, alert, fluent speech and language, [and] followed all commands . . . . It is also inconsistent with exams of other treatment providers which are consistently normal.

(R. 30) (citations omitted). The ALJ explained that he rejected Dr. Choi's opinions because they were based on plaintiff's subjective reports, they were inconsistent with the reports of other treaters, and they were not supported by objective medical evidence. That is a sufficient basis for the ALJ's rejection of the doctor's opinion.

Finally, plaintiff contends that the RFC does not account for limitations in his ability to concentrate, persist, and maintain pace ("CPP"). The ALJ said plaintiff had moderate CPP limitations:

> The next functional area addresses the claimant's ability to concentrate, persist, or maintain pace. For this criterion, the claimant has moderate limitations. The claimant contended that he has limitations in concentrating generally and following instructions. On the other hand, the claimant said that [he] is also able to drive, prepare meals, read, use the internet, and handle [his] own medical care. Additionally, the record fails to show any mention of distractibility.

(R. at 21) (citations omitted). In plaintiff's view, the RFC "does not sufficiently account for the on-task and attendance deficits that would arise out of [his] mental impairments in combination with severe epilepsy and other severe impairments." (ECF 11 at 15.)

First, the only mental impairment, other than epilepsy, that plaintiff alleges is major neurocognitive disorder due to traumatic brain injury, about which the ALJ said:

> The diagnosis appears to be based on the claimant's report rather than objective exam findings, as the claimant reported a car accident that caused a traumatic brain injury, yet on the mental status examination, he exhibited impairment only with interpreting proverbs, with no impairment in calculations, no impairment in general knowledge, no impairment in the ability to compare and contrast objects, no impairment in judgment, with adequate orientation, neat and clean appearance, appropriate behavior, and his ability to relate during the examination. While the examiner noted poor memory, he had intact remote memory, was able to repeat all digits forward and three backward before saying he could not do it anymore, and

5

> repeated 3/3 objects immediately, and 2/3 after delay, and he was well oriented. He testified to memory impairment, and while there may be some memory impairment, the evidence does not support a diagnosis of neurocognitive disorder, and he appears to manage his issues, for example, with setting reminders on his phone for medications, which has prevented him from missing any. Nonetheless, psychiatric issues, including reports of poor memory, are accounted for with a restriction to simple work with no fast-paced production requirements.

(R. 24.) In other words, the ALJ concluded that the evidence did not support a neurocognitive disorder, and in any event, any psychiatric issues plaintiff may have are addressed by the RFC. (*Id.*) Second, the ALJ did not account for on-task and attendance deficits arising from plaintiff's combined impairments because, as discussed above, he determined that such deficits, if any, did not significantly impact plaintiff's ability to work. Thus, the RFC does not provide a basis for remanding this case.

### Conclusion

For the reasons stated above, the Court denies plaintiff's motion [11], affirms the Commissioner's decision, terminates this case.

**SO ORDERED.**                                     **ENTERED: March 9, 2026**

**M. David Weisman**
**United States Magistrate Judge**

6